[No. S119948. Aug. 16, 2004.]

THE PEOPLE, Plaintiff and Appellant, v.
BRENNER CARL AULT, Defendant and Respondent.

COUNSEL

Paul J. Pfingst and Bonnie M. Dumanis, District Attorneys, Kim-Thoa Hoang, Anthony Lovett, D. Michael Ebert, Christopher F. Lindberg and Craig E. Fisher, Deputy District Attorneys, for Defendant and Appellant.

Cleary & Sevilla and Charles M. Sevilla for Plaintiff and Respondent.

OPINION

BAXTER, J.—In *People v. Nesler* (1997) 16 Cal.4th 561 [66 Cal.Rptr.2d 454, 941 P.2d 87] (*Nesler*), a plurality of this court concluded that when a *criminal defendant* appeals the *denial* of his or her motion for a new trial on grounds of juror misconduct, the appellate court must independently review, as a mixed question of law and fact, the trial court's conclusion that no prejudice arose from the misconduct. (*Id.* at p. 582, fn. 5 (lead opn. of George, C. J.).) We granted review in this case to determine the proper standard of review when the trial court *granted* a criminal defendant's motion for a new trial on grounds of prejudicial juror misconduct, and the *People* appeal, disputing only the trial court's determination that the misconduct *was prejudicial.*

The Court of Appeal majority determined that, in such circumstances, the trial court's order is reviewed for abuse of discretion, with deference to its assessment of prejudice. Applying that standard, the Court of Appeal affirmed the order granting a new trial. The standard of review adopted by the Court of Appeal comports with the long-standing principle that an order granting, as opposed to denying, a new trial is reviewed liberally, particularly with regard to the trial court's finding that an error or irregularity in the original trial was prejudicial. We find no compelling reason to depart from this principle where the error or irregularity is conceded, and prejudice is the only disputed issue, even if the assessment of prejudice involves a mixed question of law and fact.

█ We therefore confirm that when a trial court, after examining all the relevant circumstances, grants a new trial in a criminal case on grounds that proven misconduct was prejudicial, that determination is not subject to independent or de novo review on appeal, but may be affirmed unless it constituted an abuse of discretion.

Here, as below, the People do not dispute that misconduct occurred when a juror in a child molestation case, contrary to her instructions, received information from an outside source, then shared this information with other jurors during deliberations in an effort to bolster the credibility of the prosecuting witness. The People have also conceded that because the prejudice issue is "close," the trial court's determination of that issue cannot be reversed for abuse of discretion. Thus, as we signaled in our order limiting the issues on review, we do not undertake to second-guess the Court of Appeal majority's conclusion that there was no such abuse. We will therefore affirm the Court of Appeal's judgment.

## FACTS AND PROCEDURAL BACKGROUND

An information charged defendant with 13 counts of sexual misconduct involving three girls. Counts 1 through 10 alleged defendant had committed lewd and lascivious acts against Stephanie C. (Stephanie), a child under 14, between January 1998 and October 2000. (Pen. Code, § 288, subd. (a).)[1] Counts 1 through 5 involved alleged incidents at defendant's apartment. Count 1 asserted that defendant kissed Stephanie on the lips before taking her to a baseball game. Count 2 charged that he touched her near her vagina on the same occasion. Count 3 alleged a vaginal touching on another day before they went out for ice cream. Counts 4 and 5 asserted that on still another occasion, defendant touched Stephanie on or near her vagina and kissed her while she was lying on his bed after she had removed her clothing.

Count 6 charged a vaginal touching in a swimming pool. Count 7 alleged that defendant kissed Stephanie while they were in her bedroom. Counts 8 through 10 related that defendant touched Stephanie's vagina, and twice had her touch his penis, while they were at the beach.

At trial, Stephanie testified concerning each of counts 1 through 10. As to counts 4 and 5—the only ones that resulted in convictions—her testimony was as follows: On September 14, 2000, her brother's birthday, while her parents were in Europe, defendant picked her up after school, took her to his apartment, and showed her paint balls. Then he brought her into the bedroom, lay on her, kissed her, and asked her to undress. He left the room while she removed her clothing and slipped under the covers. He returned, again lay on her and kissed her, and told her she could put a pillow over her face if she was embarrassed. She did so. Defendant told her he had put his finger in her vagina and said he liked it when she got wet. He asked her not to tell or he would go to jail. He also had her touch his penis. After she dressed, she sat on his lap while he showed her pornographic pictures on his computer,

---

[1] All further unlabeled statutory references are to the Penal Code.

touching her vagina again as he did so. They then went to her brother's birthday party.

Stephanie explained that she thought of defendant, a 35-year-old man, as her boyfriend, but felt guilty and embarrassed about the molestations. They came to light after she had a fight with her "grammy," who was caring for her while her parents were in Europe. These problems led to Stephanie staying with a teacher and family friend, Kym T. (Kym). Kym asked Stephanie if defendant kissed her. Stephanie first said no, but after Kym related her own molestation experience, Stephanie admitted some of the conduct with which defendant was later charged. Kym testified that she confronted defendant, who neither denied the molestations nor called Stephanie a liar. Stephanie admitted at trial that the day before she talked to Kym, she was angry with defendant because he failed to give her a ride home from school.

Stephanie's preliminary hearing testimony omitted reference to several significant incidents and details, which she remembered only a few days before trial. There was evidence that her embarrassment, and her developmental disabilities, including an expressive language disorder, may have hindered her in disclosing the molestations sooner.

At the close of the prosecution's case, the court granted defendant's motion for acquittal (§ 1118.1) as to counts 6 and 7. At the same time, the court acquitted defendant of one of the counts involving the other alleged victims.

Defendant testified in his defense, denying each incident of molestation. He insisted he firmly denied to Kym that he had molested Stephanie. There was evidence that the alleged molestations prior to the baseball game could not have occurred at the time of year when Stephanie said they did. Several witnesses testified that at her brother's September 14, 2000, birthday party, which allegedly took place just after the incidents charged in counts 4 and 5, Stephanie's behavior and demeanor were entirely normal. Though defendant admitted he had pornographic images on his computer, an expert testified he found no evidence these images were accessed between 1:00 p.m. and 7:00 p.m. on September 14, 2000.

The jury convicted defendant on counts 4 and 5,[2] but acquitted him of all the remaining counts, including those involving the other alleged victims. After the verdict, defendant moved for a new trial on four grounds, including juror misconduct. The trial court rejected three of the four grounds, but granted a new trial based on prejudicial juror misconduct.

---

[2] The jury found, as the complaint alleged, that count 4 involved substantial sexual conduct with the victim (§ 1203.066, subds. (a)(8), (b)), thus rendering defendant ineligible for probation on that count.

The evidence of juror misconduct was as follows: Sometime during trial, Juror No. 2 told her manicurist she was serving on a jury. When the manicurist asked what kind of trial it was, Juror No. 2 disclosed it was a child molestation case. The manicurist then related to Juror No. 2 that someone she knew had been molested by her father, who nonetheless later escorted her down the aisle at her wedding. During deliberations, one of the jurors was replaced by an alternate. The new juror told the other panelists he did not believe Stephanie's testimony. Juror No. 2 stated that the jury had already moved on to other issues. The alternate indicated his skepticism was based in part upon Stephanie's demeanor. At this point, in an effort to get the alternate "up to speed" so they could discuss other matters, Juror No. 2 told the manicurist's story. Two other jurors recalled hearing a story about a friend who was molested but behaved normally. One said Juror No. 2 told the story as though it was Juror No. 2's own friend who was the victim.

In ruling on defendant's juror misconduct claim, the trial court first found that misconduct had occurred, as follows: "Juror [No. 2] spoke to an outside source (her manicurist) about the trial while [it] was still pending[,] [and] she received outside information from that source about how a molested child may act normally after the molest. Then she used this information to influence the other jurors during deliberations when they were discussing the victim's credibility." These actions violated the oft-repeated admonitions not to discuss the case with nonjurors, or to consult outside sources of information, and not to share information gained from such sources with other jurors during deliberations. "The totality of these events amounts to juror misconduct."

The trial court then analyzed the issue of prejudice. The court invoked the test recited in *Nesler, supra*, 16 Cal.4th 561, 578–579, to the effect that when a juror commits misconduct by receiving extraneous material, prejudice—i.e., a substantial likelihood of actual bias—will be found if either (1) the extraneous material is itself "inherently" prejudicial, or (2) the nature of the misconduct and the surrounding circumstances indicate it is substantially likely a juror was actually biased.

Applying this test, the trial court reasoned that the issue was whether "Juror [No. 2's] statements about child molestation, judged objectively, amount[ed] to such inherent prejudice that it would have influenced the jury[.] [¶] Objectively, Juror [No. 2's] statements were meant to influence the other jurors. She made them at a time when the credibility of the witness was being discussed[,] and she made [them] for the sole purpose to lend more credibility to the victim's testimony. Therefore[,] under the first prong of the test, Juror [No. 2's] statements amount to substantial prejudice. [Citation.]" Accordingly, the court granted the new trial motion.

The People appealed (§ 1238, subd. (a)(3)), arguing only that the trial court erred in finding the misconduct prejudicial. The Court of Appeal affirmed. It first concluded that a trial court order *granting* a new trial for juror misconduct is reviewed for abuse of discretion. The abuse-of-discretion standard extends, the Court of Appeal reasoned, not only to the trial court's purely factual determinations, but also to its assessment of prejudice from established misconduct.

Applying this standard, the Court of Appeal noted three instances of misconduct: First, Juror No. 2 discussed the case with a nonjuror. Second, she shared with other jurors the information obtained in this conversation, in order to cut off a new juror (the alternate) who tried to reopen discussion of Stephanie's credibility, and who expressed doubts on that issue based on Stephanie's demeanor. Third, as a result, the jury apparently curtailed discussion of credibility concerns, contrary to their instruction to begin deliberations anew after the alternate was impaneled.

Furthermore, the Court of Appeal noted, "[w]e cannot say," in light of the entire record, that "this is a case where there was no substantial likelihood of prejudice to [defendant]." The Court of Appeal stressed that the case was close, and that defendant was acquitted of eight of the 10 counts involving Stephanie. Moreover, the court pointed out, Stephanie's demeanor was particularly important with respect to the September 2000 incident that led to the convictions on counts 4 and 5, because she apparently behaved normally at her brother's birthday party shortly after the alleged lewd and lascivious conduct occurred. The Court of Appeal further observed that "the trial court . . . personally witnessed Stephanie's testimony, and therefore was in a far better position than we are to assess the damaging effect of the manicurist's story on the issue of Stephanie's credibility . . . ." The trial court's prejudice determination, said the Court of Appeal, "[was], at least in part, credibility-based, i.e., based on the trial court's personal observations of demeanor and the evidence. We believe that such a finding is entitled to at least some deference in assessing whether the presumed prejudicial impact of the jury misconduct was rebutted."

The dissent argued that whether a new trial was granted or denied for juror misconduct, an appellate court may give deference to the trial court's factual findings, but must independently assess prejudice, a mixed question of law and fact. Applying that standard, the dissent found no substantial likelihood of actual bias.

The People sought review on the following issues: (1) "What is the appellate standard of review *on the question of prejudice* when the People seek review from the grant of a new trial motion based on juror misconduct?"

(2) Did Juror No. 2 commit *prejudicial* misconduct? Indeed, the petition insisted, "whether there was *prejudicial* juror misconduct in this case[] *is so close it turns on which appellate standard is applicable.*" Here, as below, the People do not suggest the trial court erred in finding misconduct. The People also concede that if the abuse-of-discretion standard applies to the trial court's determination of prejudice, the Court of Appeal did not err in affirming the new trial order.

Accordingly, after we granted review, we issued a separate order specifying that "[t]he issue to be briefed and argued is limited to the following: What is the proper standard of review when the People appeal an order granting a motion for a new trial due to juror misconduct?" In addressing that issue, we confine our analysis to the prejudice component of the trial court's ruling.

## DISCUSSION

■ A criminal defendant may move for a new trial on specified grounds. (§ 1181.) Among these are trial or instructional error, or prosecutorial misconduct (*id.*, subd. 5), a verdict contrary to the law or facts (*id.*, subds. 6, 7), newly discovered evidence (*id.*, subd. 8), and juror misconduct (*id.*, subds. 3, 4), including the jury's "recei[pt] [of] any evidence out of court" (*id.*, subd. 2). The defendant's right to seek a new trial in a criminal case parallels that of the losing party in a civil matter to seek a new trial on specified grounds affecting the fairness of the prior proceedings. (See Code Civ. Proc., § 657.)

Innumerable cases, both civil and criminal, have said that the trial court has broad discretion in ruling on a new trial motion, and that the ruling will be disturbed only for clear abuse of that discretion. (See 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Judgment, §§ 123–124, pp. 153–155, and cases cited; 8 Witkin, Cal. Procedure (4th ed. 1997) Attack on Judgment in Trial Court, § 143, p. 644, and cases cited.) But refinements to this general rule have developed.

A series of decisions, both civil and criminal, have distinguished sharply between orders granting, and orders denying, a new trial. These cases state the relevant distinction in two ways. Some hold that the deferential abuse-of-discretion standard is *particularly* applicable to an order *granting* a new trial, as opposed to one denying such relief.[3] Others suggest that such appellate deference is appropriate for orders granting, but not those denying, new trials.

---

[3] (E.g., *Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681] (*Jiminez*); *Malkasian v. Irwin* (1964) 61 Cal.2d 738, 748 [40 Cal.Rptr. 78, 394 P.2d 822] (*Malkasian*); see, e.g., *Shaw v. Pacific Greyhound Lines* (1958) 50 Cal.2d 153, 159 [323 P.2d 391] (*Shaw*); *Mosesian v. Pennwalt Corp.* (1987) 191 Cal.App.3d 851, 858 [236 Cal.Rptr. 778] (*Mosesian*).)

The latter decisions indicate that where the complaining party reasserts, on appeal, the claims previously raised in an unsuccessful new trial motion, the appellate court must employ independent review and judgment to determine if prejudicial trial error occurred.[4]

Courts have given several reasons for the distinction. The deference due orders *granting* new trials is commonly justified on grounds that "[t]he trial judge is familiar with the evidence, witnesses and proceedings, and is therefore in the best position to determine whether, in view of all the circumstances, justice demands a retrial. . . . The presumptions on appeal are in favor of the order, and the appellate court does not independently redetermine the question whether an error was prejudicial . . . . Review is limited to the inquiry whether there was any support for the trial judge's ruling, and the order will be reversed only on a strong affirmative showing of abuse of discretion. [Citations.]" (8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, § 143, p. 644; see also 9 Witkin, Cal. Procedure, *supra*, Appeal, § 412, p. 463.) Moreover, we emphasized in *Malkasian, supra,* 61 Cal.2d 738, that an order granting a new trial does not finally dispose of any party's rights. (*Id.* at p. 748.)

Different considerations apply, it is said, when a trial court denies a new trial. Such an order is not independently appealable (§ 1237; Code Civ. Proc., § 904; see, e.g., *People v. Henderson* (1977) 19 Cal.3d 86, 90, fn. 3 [137 Cal.Rptr. 1, 560 P.2d 1180]); instead, the grounds for the unsuccessful motion are assessed on appeal from the underlying final judgment against the complaining party (*People v. Lavergne* (1971) 4 Cal.3d 735, 745 [94 Cal.Rptr. 405, 484 P.2d 77]). Accordingly, article VI, section 13 of the California Constitution obliges the appellate court to conduct an independent examination of the proceedings to determine whether a miscarriage of

---

[4] (E.g., *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 417, fn. 10 [185 Cal.Rptr. 654, 650 P.2d 1171] *(Hasson)* [juror misconduct]; *City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 872 [135 Cal.Rptr. 647, 558 P.2d 545] *(Decker)*; *Enyart v. City of Los Angeles* (1999) 76 Cal.App.4th 499, 508 [90 Cal.Rptr.2d 502] [juror misconduct]; *Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 817–818 [89 Cal.Rptr.2d 505] [juror misconduct]; *Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1160 [79 Cal.Rptr.2d 641]; *English v. Lin* (1994) 26 Cal.App.4th 1358, 1364 [31 Cal.Rptr.2d 906] [juror misconduct]; *Smoketree-Lake Murray, Ltd. v. Mills Concrete Construction Co.* (1991) 234 Cal.App.3d 1724, 1745 [286 Cal.Rptr. 435] [juror misconduct]; *Andrews v. County of Orange* (1982) 130 Cal.App.3d 944, 955 [182 Cal.Rptr. 176] *(Andrews)* [juror misconduct]; *People v. Brown* (1976) 61 Cal.App.3d 476, 481–482 [132 Cal.Rptr. 217] *(Brown)* [juror misconduct]; *Clemens v. Regents of University of California* (1971) 20 Cal.App.3d 356, 366 [97 Cal.Rptr. 589] *(Clemens)* [juror misconduct]; *Deward v. Clough* (1966) 245 Cal.App.2d 439, 445 [54 Cal.Rptr. 68] *(Deward)* [juror misconduct]; *Wilkinson v. Southern Pacific Co.* (1964) 224 Cal.App.2d 478, 483–484 [36 Cal.Rptr. 689] *(Wilkinson)*; see *Lankster v. Alpha Beta Co.* (1993) 15 Cal.App.4th 678, 682–684 [18 Cal.Rptr.2d 923].)

justice occurred.[5] As in any appeal from a final judgment, the reviewing court must determine for itself whether errors denied a fair trial to the party against whom the judgment was entered.[6] As one decision has suggested, it would be a "non sequitur" to apply more deferential review to a claimed error affecting the fairness of the judgment simply because the complaining party moved unsuccessfully for a new trial on the same ground in the court below. (*Deward, supra,* 245 Cal.App.2d 439, 445.)

Courts have stressed the particular need for independent review of the trial court's reasons for *denying* a new trial motion in *juror bias* cases. This is because the reviewing court must protect the complaining party's right to a fully impartial jury as an " 'inseparable and inalienable part' of the [fundamental] right to jury trial [(U.S. Const., amend. VI; Cal. Const., art. I, § 16)]. [Citations.]" (*Andrews, supra,* 130 Cal.App.3d 944, 953; see also *Brown, supra,* 61 Cal.App.3d 476, 481; *Clemens, supra,* 20 Cal.App.3d 356, 360–361.)[7]

█ Of course, the discretion to *grant* a new trial, while broad, is not unlimited. Before ordering a case retried, the trial court must make *its* independent determination, under article VI, section 13 of the California Constitution, both that error occurred, and that the error prevented the complaining party from receiving a fair trial. (See 9 Witkin, Cal. Procedure, *supra,* Appeal, § 412, p. 463, and authorities cited.) Thus, it has been said that the trial court has "no discretion" to award a new trial where no

---

[5] Article VI, section 13 provides in pertinent part that "[n]o judgment shall be set aside, or new trial granted, . . . on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

[6] (E.g., *Hasson, supra,* 32 Cal.3d 388, 417, fn. 10; *Brown, supra,* 61 Cal.App.3d 476, 481–482; *Clemens, supra,* 20 Cal.App.3d 356, 366; *Deward, supra,* 245 Cal.App.2d 439, 445; *Wilkinson, supra,* 224 Cal.App.2d 478, 483; see *Decker, supra,* 18 Cal.3d 860, 871–872.)

[7] Despite these considerations, the modern authorities are by no means uniform that an order denying a motion for new trial is subject to independent review. A number of our own recent criminal decisions have recited that such an order is reviewed under a "deferential abuse-of-discretion standard" (*People v. Navarette* (2003) 30 Cal.4th 458, 526 [133 Cal.Rptr.2d 89, 66 P.3d 1182]) and will not be disturbed " 'unless a manifest and unmistakable abuse of discretion clearly appears' " (*People v. Williams* (1988) 45 Cal.3d 1268, 1318 [248 Cal.Rptr. 834, 756 P.2d 221] [juror misconduct]; see also, e.g., *People v. Earp* (1999) 20 Cal.4th 826, 890 [85 Cal.Rptr.2d 857, 978 P.2d 15]; *People v. Davis* (1995) 10 Cal.4th 463, 524 [41 Cal.Rptr.2d 826, 896 P.2d 119]; *People v. Turner* (1994) 8 Cal.4th 137, 212 [32 Cal.Rptr.2d 762, 878 P.2d 521]; *People v. Clair* (1992) 2 Cal.4th 629, 667 [7 Cal.Rptr.2d 564, 828 P.2d 705] (*Clair*); see also *Bardessono v. Michels* (1970) 3 Cal.3d 780, 795–796 [91 Cal.Rptr. 760, 478 P.2d 480] [factual determination that no juror misconduct occurred]).

prejudicial error occurred. (E.g., *Osborne v. Cal-Am Financial Corp.* (1978) 80 Cal.App.3d 259, 266 [145 Cal.Rptr. 584] (*Osborne*); see also *Clair, supra,* 2 Cal.4th 629, 667.)

Nonetheless, the weight of modern California authority is that the trial court's order granting a new trial will not be disturbed if fairly debatable, even if the reviewing court itself, addressing the issues de novo, would not have found a basis for reversal. (E.g., *Jiminez, supra,* 4 Cal.3d 379, 387; *Malkasian, supra,* 61 Cal.2d 738, 747; *Shaw, supra,* 50 Cal.2d 153, 159.) In particular, the traditional rule is that the reviewing court will not substitute its judgment for the trial court's determination that *error was prejudicial,* and thus warrants a new trial. (E.g., *Liodas v. Sahadi* (1977) 19 Cal.3d 278, 285 [137 Cal.Rptr. 635, 562 P.2d 316]; *Treber v. Superior Court* (1968) 68 Cal.2d 128, 132 [65 Cal.Rptr. 330, 436 P.2d 330]; *Richard v. Scott* (1978) 79 Cal.App.3d 57, 65 [144 Cal.Rptr. 672]; see *Osborne, supra,* 80 Cal.App.3d 259, 266.)

In *Nesler, supra,* 16 Cal.4th 561, the criminal defendant moved for a new trial on grounds of juror misconduct. After an evidentiary hearing, the trial court found that a juror had indeed committed misconduct when, during the sanity phase, she overheard unflattering information about the defendant from an outside source, failed to disclose this information or its source to the court, then shared versions of what she had heard with other jurors during deliberations. However, the court concluded, the information received was not inherently prejudicial, and the circumstances did not demonstrate the offending juror's actual bias. Accordingly, the new trial motion was denied.

The Court of Appeal affirmed. However, this court reversed, holding that the trial court had erred in concluding there was no substantial likelihood the offending juror's misconduct demonstrated her "actual bias." As part of its analysis, the lead opinion stated the standard of review of the ruling on the motion for new trial as follows: "We accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence. [Citations.] Whether prejudice arose from juror misconduct, however, is a mixed question of law and fact subject to an appellate court's independent determination. [Citations.]" (*Nesler, supra,* 16 Cal.4th 561, 582, fn. omitted (lead opn. of George, C. J.).)

In an explanatory footnote, the *Nesler* lead opinion deemed it well established that "appellate courts . . . conduct an independent review of whether a defendant was prejudiced by juror misconduct." (*Nesler, supra,* 16 Cal.4th 561, 582, fn. 5 (lead opn. of George, C. J.).) The opinion cited, with apparent approval, the principle set forth in *Andrews, supra,* 130 Cal.App.3d 944, at pages 954–955, "that in reviewing an order denying a

motion for new trial based upon jury misconduct, the reviewing court has a constitutional obligation to determine *independently* whether the misconduct prevented the complaining party from having a fair trial. [Citation.]" (*Nesler, supra,* at p. 582, fn. 5 (lead opn. of George, C. J.).)

The People now urge that an identical standard should apply on their appeal from an order *granting* a new criminal trial on grounds of prejudicial juror misconduct. While the trial court's findings of fact constituting misconduct may be entitled to deference if substantially supported, the People insist, its determination that the misconduct was prejudicial—a mixed question of law and fact—requires independent review. We are not persuaded.

The People first insist that under the "modern approach" to standard-of-review issues, appellate courts, regardless of the context, uniformly give independent review to mixed questions of law and fact, or at least those mixed questions that are "predominantly legal." (See generally *People v. Louis* (1986) 42 Cal.3d 969, 984–988 [232 Cal.Rptr. 110, 728 P.2d 180] (*Louis*).) De novo review of mixed law and fact questions is particularly favored, the People observe, when a constitutional right (here, the right to an impartial jury) is "implicate[d]." (*People v. Cromer* (2001) 24 Cal.4th 889, 899 [103 Cal.Rptr.2d 23, 15 P.3d 243] (*Cromer*); *Louis, supra,* at p. 987; see *United States v. McConney* (9th Cir. 1984) 728 F.2d 1195, 1203 (*McConney*); see also *Lilly v. Virginia* (1999) 527 U.S. 116, 136 [144 L.Ed.2d 117, 119 S.Ct. 1887] (*Lilly*).)[8] Whether juror misconduct led to a substantial likelihood

---

[8] As the People observe, California and federal cases have deemed the independent review standard appropriate for a diverse array of mixed law and fact questions, often on the ground, among others, that such questions were constitutionally significant and/or "predominantly legal." (See, e.g., *Lilly, supra,* 527 U.S. 116, 136 [whether hearsay has "particularized guarantees of trustworthiness" allowing its admission for truth despite confrontation clause]; *Ornelas v. United States* (1996) 517 U.S. 690, 696–697 [134 L.Ed.2d 911, 116 S.Ct. 1657] (*Ornelas*) ["reasonable suspicion" or "probable cause" for purposes of Fourth Amendment]; *Thompson v. Keohane* (1995) 516 U.S. 99, 112–113 [133 L.Ed.2d 383, 116 S.Ct. 457] (*Thompson*) ["custody" for purposes of *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]]; *Strickland v. Washington* (1984) 466 U.S. 668, 698 [80 L.Ed.2d 674, 104 S.Ct. 2052] ["prejudice" component of ineffective assistance of counsel]; *McConney, supra,* 728 F.2d 1195, 1199–1204 ["exigent circumstances" justifying warrantless search]; *Cromer, supra,* 24 Cal.4th 889, 894–902 [prosecution's "due diligence" to find unavailable witness]; *People v. Jones* (1998) 17 Cal.4th 279, 296 [70 Cal.Rptr.2d 793, 949 P.2d 890] [voluntariness of confession]; *People v. Alvarez* (1996) 14 Cal.4th 155, 182–185 [58 Cal.Rptr.2d 385, 926 P.2d 365] [reasonableness of search resulting from stop at highway checkpoint]; *People v. Edwards* (1991) 54 Cal.3d 787, 807 [1 Cal.Rptr.2d 696, 819 P.2d 436] ["reasonable likelihood of fair trial" for change of venue]; *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 884, 888 [264 Cal.Rptr. 139, 782 P.2d 278] [whether electronic data processing equipment was taxable business fixture]; *Louis, supra,* 42 Cal.3d 969, 984–988 [prosecution's due diligence to find "unavailable" witness]; *People v. Leyba* (1981) 29 Cal.3d 591, 597–598 [174 Cal.Rptr. 867, 629 P.2d 961] (*Leyba*) [reasonableness of investigative detention].) Other mixed law and fact questions have been given "substantial evidence" review

of actual juror bias is, the People aver, such a "predominantly legal," constitutionally significant mixed question of law and fact.

■ We need not belabor whether prejudice from juror misconduct is a "predominantly legal" mixed law and fact question. We so identified it in *Nesler, supra,* 16 Cal.4th 561, 582, and we accept, for purposes of argument here, the general correctness of that characterization. We may assume that in a juror misconduct case, the prejudice issue is one "in which the ' "historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] [legal] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." ' [Citations.]" (*Cromer, supra,* 24 Cal.4th 889, 894, second brackets added.)

■ Nonetheless, we conclude that for purposes of this case, we need not depart from the long-established principle of broad deference to trial court orders granting new trials. In our view, the rule of independent appellate review need not apply to a trial court determination that conceded juror misconduct *was prejudicial,* thus warranting a new trial, even if the prejudice issue is a mixed question of law and fact. Our decision flows from several considerations.

■ In the first place, as the People concede, the proper review standard is influenced in part by the *importance of the legal rights or interests at stake.* (E.g., *Cromer, supra,* 24 Cal.4th 889, 899.) The People urge that the instant order implicates the fundamental constitutional right to an impartial jury, but it does so in a crucially different context than was the case in *Nesler, supra,* 16 Cal.4th 561. There, we invoked an *appellate court's* obligation to protect a criminal defendant's impartial-jury rights against *deprivation* in consequence of a trial court's erroneous determination that juror misconduct was *not* prejudicial. Here, by contrast, the *trial court* has sought to protect defendant's impartial-jury rights by making a plausible finding that conceded juror misconduct *was* prejudicial, thus warranting a new trial. The People fail to show why concern for the right to an impartial jury requires the same level of appellate scrutiny in the latter situation as in the former.

on grounds that they are predominantly factual or credibility based. (E.g., *People v. Waidla* (2000) 22 Cal.4th 690, 730 [94 Cal.Rptr.2d 396, 996 P.2d 46] [whether suspect in custody initiated new discussion after invoking *Miranda* right to counsel]; see also, e.g., *Wainwright v. Witt* (1985) 469 U.S. 412, 429 [83 L.Ed.2d 841, 105 S.Ct. 844] [excusal of juror for anti-death-penalty bias]; *Rushen v. Spain* (1983) 464 U.S. 114, 120 [78 L.Ed.2d 267, 104 S.Ct. 453] [effect of ex parte communication with judge on juror's impartiality]; *Maggio v. Fulford* (1983) 462 U.S. 111, 117 [76 L.Ed.2d 794, 103 S.Ct. 2261] [competency to stand trial].)

██ As the long line of new-trial cases suggests, another important consideration in determining the appropriate standard of review is the *consequences of an erroneous determination* in the particular case. For example, appellate review of trial court orders granting nonsuits, directed verdicts, or judgments notwithstanding the verdict—orders that finally terminate claims or lawsuits—is quite strict. All inferences and presumptions are against such orders. On the other hand, as we have seen, orders granting new trials traditionally receive more liberal review, which gives the benefit of the doubt to the orders themselves.

As was explained in *Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743 [79 Cal.Rptr.2d 248], "[t]he difference in purpose means a difference in standards. Unlike nonsuits, directed verdicts, and judgments notwithstanding the verdict—we will call these the 'dispositive' motions—granting a new trial does not entail a [final] victory for one side or the other. It simply means the reenactment of a *process* which may eventually yield a winner. Accordingly, the judge has much wider latitude in deciding the motion [citation], which is reflected in an abuse of discretion standard when the ruling is reviewed by the appellate court." (*Id.* at p. 751.)

██ Thus, independent appellate review of a mixed law and fact question is crucial when an excessively deferential appellate affirmance risks error in the *final determination* of a party's rights, either as to the entire case, or on a significant issue in the litigation. Thus, if a trial court's determination that juror misconduct was *harmless* were not reviewed de novo, the risk would arise, in a close case, that the complaining party's rights had been finally resolved by an unfair trial in which the party was denied the fundamental constitutional guarantee of an impartial jury. By according deference to the trial court on this mixed law and fact issue of constitutional significance, the appellate court would abrogate its own constitutional role (see Cal. Const, art. VI, § 13) to protect the complaining party's fair-trial rights. (See *Nesler, supra,* 16 Cal.4th 561, 582, fn. 5.)

██ By contrast, affirmance of a trial court order *granting* a new trial on grounds that established juror misconduct *was* prejudicial simply endorses the trial court's effort to fulfill *its* responsibility to protect the right to an impartial jury. Even if the trial court has erred on the side of caution in a close case, appellate deference to the court's determination produces no final victory for either party, but simply allows the matter to be retried before a new jury. For this critical reason, the determination of *Nesler, supra,* 16 Cal.4th 561, that the mixed law and fact question of prejudice from juror misconduct is subject to independent review after *denial* of a criminal

defendant's motion for new trial, does not necessarily apply to review of an order *granting* a new trial.[9]

The People point out that appellate courts independently review mixed law and fact questions, particularly those with constitutional significance, in furtherance of their responsibility to enforce the requisite constitutional standards and to maintain consistency in precedent. (See, e.g., *Cromer, supra,* 24 Cal.4th 889, 901; *Leyba, supra,* 29 Cal.3d 591, 598; see also *Ornelas, supra,* 517 U.S. 690, 697.) But that consideration is diminished when the issue for review is simply whether *prejudice* arose from error or misconduct in the trial court.

Though assessments of prejudice may, and often do, involve the application of law to facts, they depend heavily on the unique circumstances of the particular case, and usually are "so factually idiosyncratic and highly individualized as to lack any [significant] precedential value." (*Cromer, supra,* 24 Cal.4th 889, 901.) Such analyses provide little in the way of general rules or guidelines to govern conduct in future situations. Hence, the need for unified precedent does not weigh strongly in favor of independent review of a trial court's determination, for purposes of a new trial motion, that prejudice arose from error or misconduct in proceedings before that court.

Moreover, it is the trial court that has a "first-person vantage" (*Thompson, supra,* 516 U.S. 99, 114) on the *effect* of trial errors or irregularities on the fairness of the proceedings in that court. This is certainly true in cases of juror misconduct, when the trial court has taken evidence, including the testimony of the jurors themselves, for the specific purpose of determining whether misconduct gave rise to a substantial likelihood that one or more panelists were actually biased.

A trial court's finding of prejudice is based, to a significant extent, on " 'first-hand observations made in open court,' " which that court itself is best positioned to interpret. (*Cromer, supra,* 24 Cal.4th 889, 902, quoting *Tolbert v. Page* (9th Cir. 1999) 182 F.3d 677, 684, italics added by *Cromer.*) Thus, where the effect of the ruling below is simply that the case will be retried free of the error or misconduct that infected the original proceeding,

---

[9] We have emphasized that the *existence* of misconduct is essentially *undisputed* in this case, and that the People's only complaint on appeal is with the trial court's determination of resulting *prejudice.* Where *an error or irregularity is established,* and the only issue is whether the trial court correctly found prejudice, the consequence of a deferential affirmance is only that the party who opposed the new trial motion will have to retry the matter *under correct rules of law.* In the case before us, the only result is that the People must re-present their evidence before a new jury. Accordingly, we *need not and do not* consider whether a more stringent standard of review might apply to a trial court's determination of *error* leading to its decision to grant a new trial, where the claim of error involved a mixed law and fact issue.

we may conclude that " 'the concerns of judicial administration tip in favor of the trial court' " (*Cromer, supra,* at p. 902, quoting *Tolbert, supra,* at p. 684) and suggest a deferential standard of appellate review.[10]

 The People note that in *In re Carpenter* (1995) 9 Cal.4th 634 [38 Cal.Rptr.2d 665, 889 P.2d 985] (*Carpenter*), we independently reviewed, and reversed, a lower court finding that juror misconduct was prejudicial. But that case, a habeas corpus matter, is procedurally inapposite. The trial court has broad statutory discretion to grant a new trial where a direct motion for such relief is made during the pendency of the trial court proceedings themselves. On the other hand, the discretion to grant relief on habeas corpus is much narrower.

While all intendments traditionally favor a new trial order, habeas corpus is a separate, collateral proceeding that attacks a presumptively valid judgment. "For purposes of collateral attack, all presumptions favor the truth, accuracy *and fairness* of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands . . . . [Citations.]" (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1260 [275 Cal.Rptr. 729, 800 P.2d 1159], first italics added.)[11] This presumption against the validity of a collateral attack on a conviction and sentence weighs strongly toward close appellate review of all mixed law and fact determinations leading to a lower court's decision to grant relief on habeas corpus.[12]

---

[10] In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 [107 Cal.Rptr.2d 841, 24 P.3d 493], we stated that while orders granting new trials generally are examined for abuse of discretion, "it is also true that any determination underlying any order is scrutinized under the test appropriate to such determination. [Citations.]" (*Id.* at p. 859.) *Aguilar* confronted the question whether, in granting a new trial, the superior court misdecided a pure question of law when concluding it had earlier erred in granting summary judgment for the defendant. We had no occasion in *Aguilar* to examine whether, contrary to long tradition, the trial court's mixed law and fact determination that *prejudice* arose from trial error or irregularities is subject to independent review. It is axiomatic that cases are not authority for propositions not considered. (E.g., *People v. Nguyen* (2000) 22 Cal.4th 872, 879 [95 Cal.Rptr.2d 178, 997 P.2d 493]; *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 348 [79 Cal.Rptr.2d 308, 965 P.2d 1178]; *In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

[11] We realize that, at the time we rendered our opinion denying habeas corpus relief in *Carpenter, supra,* 9 Cal.4th 634, the conviction and sentence at issue in that case were not yet final *on appeal.* (See *People v. Carpenter* (1999) 21 Cal.4th 1016 [90 Cal.Rptr.2d 607, 988 P.2d 531].) This does not alter the principle that a judgment once finally rendered in the trial court is presumed valid against a *collateral* attack by habeas corpus.

[12] Of course, when *we* issue an order to show cause in a habeas corpus matter involving juror misconduct, and appoint a judicial officer to act as *our referee* to take evidence and make recommendations of fact and law as directed by us, it is well settled that the referee's report is subject to our independent review. (E.g., *In re Hamilton* (1999) 20 Cal.4th 273, 296–297 [84 Cal.Rptr.2d 403, 975 P.2d 600] (*Hamilton*).)

The People cite two provisions of the California Constitution which, they urge, require de novo appellate review when a trial court grants a new trial for prejudicial juror misconduct. First, they invoke article I, section 29, which provides that "[i]n a criminal case, the [P]eople . . . have the right to due process of law and to a speedy and public trial." On the assumption that "due process" means "equal process," the People urge that if a defendant receives independent review on the issue of juror bias when the trial court denies a new trial, the People are entitled to the same standard of review when the trial court finds prejudice and grants a new trial.

However, we have rejected the notion that "the [P]eople's right to due process of law must be the exact equivalent to a criminal defendant's right to due process." (*Miller v. Superior Court* (1999) 21 Cal.4th 883, 896 [89 Cal.Rptr.2d 834, 986 P.2d 170] [People's state constitutional right to due process does not "trump" provisions of state Constitution's "newsperson's shield" provisions, though defendant may have superior *federal* due-process and fair-trial right to discover newsperson's source]; see also *Menendez v. Superior Court* (1992) 3 Cal.4th 435, 456–457, fn. 18 [11 Cal.Rptr.2d 92, 834 P.2d 786] [People's state constitutional right to due process does not "trump" existing statutory privileges and immunities, including psychotherapist-patient privilege].) Here, the People fail to establish, on its own merits, their claimed due process right to independent review of a trial court's determination that juror misconduct, the existence of which is conceded on appeal, was prejudicial.

As we have explained, when a trial court denies a criminal defendant a new trial because it concludes that no prejudice arose from juror misconduct, one of the most important reasons why an appellate court applies independent review to this mixed law and fact question is to ensure that the defendant's conviction was not obtained in violation of the fundamental right to trial by an impartial jury. The People suffer no equivalent harm to their fundamental rights merely because they are forced to *retry* criminal charges after the court in which the original trial occurred has plausibly determined that juror misconduct gave rise to a substantial likelihood of actual bias against the defendant.

Certainly the People, and society at large, have a significant *interest* in preserving fair convictions. The trial court's discretion to award a new trial must be exercised with due regard to this important interest. Nonetheless, the People fail to persuade us that they have a due process right—equivalent to the defendant's right to be free of conviction by a biased jury—to avoid *retrying* criminal charges before a new jury unless an appellate court comes to an independent conclusion that the trial court's determination of prejudice from juror misconduct was correct. We therefore conclude that

article I, section 29 of the California Constitution affords the People no due process right to independent review of a trial court order granting a new trial on that ground.

The People also point to article VI, section 13 of the California Constitution, which provides that "[n]o judgment shall be set aside, *or new trial granted*," for trial errors unless "the court," after examining the entire record, finds a miscarriage of justice. (Italics added.) This provision, the People suggest, requires an *appellate court* to exercise independent review for prejudice whenever a new trial was granted below. We see no such necessary inference in the constitutional language.

In this case, "the court" that granted a new trial, pursuant to section 1181, is the *trial court*. Under article VI, section 13 of the state Constitution, *that court* could not award such relief unless it was satisfied, from an examination of the entire record, that Juror No. 2's misconduct gave rise to a substantial likelihood of actual bias. (See, e.g., *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 194–198 [96 Cal.Rptr.2d 463, 999 P.2d 686] [suggesting that where error is subject to harmless-error analysis, article VI, section 13 requires the trial court to determine prejudice before that court sets aside the judgment in consequence of such error]; *Nesler, supra*, 16 Cal.4th 561, 578–579 [test of reversible juror bias arising from misconduct in receipt of extraneous material]; *Carpenter, supra*, 9 Cal.4th 634, 653–654 [same]; see also 9 Witkin, Cal. Procedure, *supra*, Appeal, § 412, p. 463.)

But the trial court did not fail in this obligation. The court took evidence, rendered detailed factual findings leading to its determination that misconduct had occurred, and carefully analyzed the issue of prejudice. There is no doubt that, before *it* ordered a new trial, the court below independently found a substantial likelihood of actual bias arising from Juror No. 2's misconduct.[13]

---

[13] As the Court of Appeal dissent suggested, the trial court's *mode of analysis*, and particularly its use of terms, did not precisely adhere to the two-pronged test we set forth in *Nesler, supra*, 16 Cal.4th 561, and *Carpenter, supra*, 9 Cal.4th 634, for determining whether a juror's improper receipt of extraneous material gives rise to a substantial likelihood of actual bias. As noted above, such bias may appear if either (1) the extraneous material itself was "inherently" prejudicial or (2) in any event, the nature of the misconduct and the surrounding circumstances suggest it is substantially likely a juror was actually biased. (*Nesler, supra*, at pp. 578–579; *Carpenter, supra*, 9 Cal.4th at pp. 653–654.) The trial court conflated these prongs, indicating that both the nature of the manicurist's story and the circumstances under which Juror No. 2 retold it during deliberations "amount[ed] to such *inherent* prejudice that it would have influenced the jury." Having found "inherent" prejudice under the first prong of *Nesler*, the court reasoned, "it need not address the second prong." Despite its semantic confusion, however, we see no fatal flaw in the trial court's reasoning. In fact, the court appears to have determined both that the manicurist's story was "inherently" prejudicial because it bore directly on a significant credibility issue at trial—the demeanor to be expected from a child who has just been molested—*and* that Juror No. 2 retold it during deliberations

Because the ruling below was to *grant* a new trial, review of that ruling cannot result in an order of an *appellate* court setting a judgment aside, or granting a new trial. Under these circumstances, we conclude, article VI, section 13 of the state Constitution does not compel de novo *appellate* review of the trial court's prejudice determination before that ruling is *affirmed* on appeal.

The trial court's constitutional obligation, upon a motion for new trial, to examine the record independently for prejudicial error "changes the approach to [prejudicial] error on appeal, after it has been successfully urged in the trial court." (9 Witkin, Cal. Procedure, *supra*, Appeal, § 412, p. 463.) In such circumstances, all presumptions favor the trial court's order, and prejudice, at least, need not be independently redetermined.

We realize that article VI, section 13 expresses a constitutional policy against unnecessary and wasteful retrials. (See, e.g., *People v. Cahill* (1993) 5 Cal.4th 478, 489–490 [20 Cal.Rptr.2d 582, 853 P.2d 1037]; *People v. O'Bryan* (1913) 165 Cal. 55, 63–64 [130 P. 1042].) However, the long-established rule of deference to trial court orders granting new trials recognizes that those courts are best positioned to determine whether errors or irregularities in proceedings before them were prejudicial. Moreover, when prejudicial errors or irregularities have occurred, the trial court's statutory power to order a new trial before a final judgment is entered promotes judicial efficiency by obviating the need for an appellate reversal or collateral attack.

On the other hand, trial courts have a strong incentive not to crowd their dockets and squander limited judicial resources by ordering unnecessarily that cases over which they presided, and which have already been taken to verdict, be retried. We are confident that motions for such relief are examined with considerable care.[14] Thus, when a trial court, mindful of its constitutional duty not to order a new trial except upon *its* independent determination

---

*for the specific purpose* of influencing other jurors on this issue, thus giving rise to an inference of actual bias. (See *Nesler*, *supra*, 16 Cal.4th at pp. 584–585 [actual bias found where juror obtained information relevant to trial issues and disclosed it to other jurors]; cf., e.g., *Carpenter*, *supra*, at pp. 655–657 [extraneous information not "inherently" prejudicial where trial evidence was " 'overwhelming,' " and circumstances do not disclose actual bias where, among other things, juror did *not* disclose information to other jurors]; *People v. Danks* (2004) 32 Cal.4th 269, 304–313 [8 Cal.Rptr.3d 767, 82 P.3d 1249] [jurors' receipt of pastors' opinions on death penalty, and mention of biblical passages in jury room during penalty deliberations, demonstrated neither inherent, nor likely actual, bias under particular circumstances, including "overwhelming" penalty evidence and expectation that jurors may discuss religious values when deciding penalty].)

[14] As one Court of Appeal recently observed: "A trial court serves as a 'gatekeeper' on a motion for new trial. It opens the gate only rarely, a testament to the fact that the vast majority

of prejudice, nonetheless concludes that such relief is warranted, an appellate court adequately serves the constitutional policy when it reviews the trial court's prejudice determination for abuse of discretion.[15]

## CONCLUSION

The Court of Appeal majority concluded that the trial court did not abuse its discretion by granting a new trial on grounds of prejudicial juror misconduct. The majority therefore affirmed the order. We agree that the majority correctly examined the trial court's order for abuse of discretion, and was not required to determine de novo whether prejudice arose. That being the sole issue presented for our review, we affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**BROWN, J.,** Dissenting.—I am not persuaded that the standard of review for prejudice resulting from juror misconduct should be different when the

---

of trials resulting in conviction are fairly conducted. In these cases, motions for new trial are routinely made, routinely denied, and are routinely affirmed on appeal." (*People v. Andrade* (2000) 79 Cal.App.4th 651, 661 [94 Cal.Rptr.2d 314].)

[15] Two Court of Appeal decisions, while articulating the abuse of discretion standard of review, have emphasized that under article VI, section 13 of the California Constitution, trial courts have no discretion to order new trials unless *prejudicial* error occurred; the trial courts having apparently failed to *consider* the issue of prejudice before ordering those cases retried, the appellate courts simply found that no prejudice had arisen and reversed the new trial orders. (*Mosesian, supra,* 191 Cal.App.3d 851, 858–860, 867; *Garcia v. County of Los Angeles* (1986) 177 Cal.App.3d 633, 641–642 [223 Cal.Rptr. 100]; see also *Osborne, supra,* 80 Cal.App.3d 259, 266 [dictum; trial court had no discretion to grant new trial merely to serve appearance of justice, when trial court itself did not believe error was actually prejudicial].) To the extent these cases make clear that the trial court cannot award a new trial unless *it* first determines that error was prejudicial, they are consistent with the views expressed in this memorandum. However, any implication in these decisions that an actual determination of prejudice by the trial court, leading to its decision to grant a new trial, is subject to de novo appellate scrutiny is inconsistent with the views expressed herein. To that extent, *Mosesian v. Pennwalt Corp., supra,* 191 Cal.App.3d 851, *Garcia v. County of Los Angeles, supra,* 177 Cal.App.3d 633, and *Osborne v. Cal-Am Financial Corp., supra,* 80 Cal.App.3d 259, are disapproved.

More recently, a single Court of Appeal decision, *Romo v. Ford Motor Co.* (2002) 99 Cal.App.4th 1115 [122 Cal.Rptr.2d 139], has squarely held that when the superior court grants a new trial on grounds of juror misconduct, the issue of prejudice, a mixed question of law and fact, is subject to independent appellate determination. (*Id.* at pp. 1126–1127.) The *Romo* decision relied heavily upon its interpretation of such cases as *Cromer, supra,* 24 Cal.4th 889, *Hamilton, supra,* 20 Cal.4th 273, and *Nesler, supra,* 16 Cal.4th 561. As explained above, those authorities do not control the result here, and we find the *Romo* court's analysis unpersuasive. We therefore disapprove *Romo v. Ford Motor Co., supra,* 99 Cal.App.4th 1115, to the extent that decision is inconsistent with the views expressed in this opinion.

motion for new trial is granted than when the motion is denied. I therefore respectfully dissent.

Let us review the circumstances under which the majority opinion does not apply. It does not apply to a defendant, only to the People. (Maj. opn., *ante*, at pp. 1255–1256.) It does not apply to error, as opposed to prejudice resulting from that error. (*Id.* at p. 1267, fn. 9 ["we *need not and do not* consider whether a more stringent standard of review might apply to a trial court's determination of *error* leading to its decision to grant a new trial, where the claim of error involved a mixed law and fact issue"].) It does not apply to a People's appeal of an order vacating a judgment on habeas corpus on the ground of juror misconduct. (*Id.* at p. 1268.) Rather, in apparently all of these situations, independent review will routinely apply.

Suppose the question here involved a defendant's confession, and the trial court granted a new trial on the ground the confession was involuntary and its admission prejudicial. The People appeal the order granting the new trial motion. Under the majority's analysis, we would apply independent review to the question of whether the confession was voluntary. However, once the confession was deemed involuntary, because the People, not the defendant appealed, we would then consider whether admission of the involuntary confession was prejudicial by applying an abuse of discretion standard. If, however, the trial judge had vacated the judgment on habeas corpus, or if the new trial motion had been denied and the defendant appealed the underlying judgment, we would continue to apply an independent review standard. Little commends such an inconsistent practice.

Rather, as Justice Benke noted in her dissent in the Court of Appeal, according independent review to mixed questions of law and fact is based "on the sound principle that where a constitutional issue is involved, the law requires uniformity, [and] clarity of precedent." Thus, both *People v. Nesler* (1997) 16 Cal.4th 561, 582 [66 Cal.Rptr.2d 454, 941 P.2d 87], and *In re Carpenter* (1995) 9 Cal.4th 634, 647, 658–659 [38 Cal.Rptr.2d 665, 889 P.2d 985] (*Carpenter*), concluded that independent review applies to a determination of whether prejudice arose from juror misconduct. Nothing in either opinion distinguishes between appeals from orders granting and those denying such relief. Indeed, *Carpenter* was a People's appeal from an order *vacating* a judgment.

The majority attempts to distinguish *Carpenter* on the ground it involved a habeas corpus proceeding, stating, "While all intendments traditionally favor a new trial order, habeas corpus is a separate, collateral proceeding that attacks a presumptively valid judgment. . . . This presumption against the validity of a collateral attack on a conviction and sentence weighs strongly

toward close appellate review of all mixed law and fact determinations leading to a lower court's decision to grant relief on habeas corpus." (Maj. opn., *ante*, at p. 1268, fns. omitted.) However, as the majority also recognizes, *Carpenter* did *not* involve a final judgment. (*Id.* at p. 1268, fn. 11.) The record in that case had not yet been certified, and the appeal was not to be decided for another four years. (*Carpenter*, *supra*, 9 Cal.4th at p. 659; *People v. Carpenter* (1999) 21 Cal.4th 1016 [90 Cal.Rptr.2d 607, 988 P.2d 531].) Rather, Carpenter "challeng[ed] the judgment . . . shortly after its rendition" (*Carpenter*, *supra*, 9 Cal.4th at p. 642), and the judge was the *same* at trial and on the habeas corpus proceeding. (*Id.* at pp. 661, 672–673 (dis. opn. of Mosk, J.).) Thus, little basis exists to distinguish it from the circumstances here.

Moreover, the majority relies on the fact that "[a] trial court's finding of prejudice is based, to a significant extent, on ' "first-hand observations made in open court" ' which that court itself is best positioned to interpret." (Maj. opn., *ante*, at p. 1267.) That is true, however, whether the trial court does or does not find prejudice, and yet the majority does not dispute that when a new trial is denied we exercise independent review on appeal.

In addition, the majority deems critical its view that "[e]ven if the trial court has erred on the side of caution in a close case, appellate deference to the court's determination produces no final victory for either party, but simply allows the matter to be retried before a new jury." (Maj. opn., *ante*, at p. 1266; *id.* at p. 1267, fn. 9 ["In the case before us, the only result is that the People must re-present their evidence before a new jury"].) Such statements minimize the inherent costs of retrial, i.e., that the pain and trauma to a victim or the family in having to endure a retrial can be substantial, and that neither witnesses nor other persons associated with a criminal prosecution are static. Here, for example, the case involves a teenager, adopted at the age of five from Russia, who testified against a former family friend regarding a series of alleged molestations. (Maj. opn., *ante*, at p. 1256.) As a result of the majority's decision, this young woman will be forced to once again confront the person who violated a position of trust, and relive these experiences, an ordeal that can hardly be characterized as a "simpl[e]" retrial. As the People observe, "Certainly the criminal justice system is equally flawed whether a conviction is improperly set aside for nonprejudicial jury misconduct or whether a conviction is improperly allowed to stand despite prejudicial jury misconduct."

The scope of the issue before this court is simply what the appropriate standard of review on appeal is under these circumstances, not whether the Court of Appeal properly applied that standard. (See maj. opn., *ante*, at pp. 1256, 1272.) Having concluded an independent review standard is appropriate, I would reverse the judgment of the Court of Appeal and remand this case to that court for further proceedings.