[No. B237074. Second Dist., Div. Five. Jan. 10, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLTON MAYHAM, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of the Background and Discussion, parts A. and C.

**COUNSEL**

Jennifer Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Pamela C. Hamanaka, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

Defendant and appellant Carlton Mayham (defendant) was convicted of corporal injury to the mother of his child (Pen. Code, § 273.5, subd (a)).[1] On appeal, defendant contends that the trial court violated his state and federal constitutional rights to due process, a fair trial, and effective assistance of counsel by excluding him from the courtroom without an "audio or video feed"[2] allowing him to hear a trial witness's testimony. In the published portion of this opinion, we hold that under the circumstances, the trial court did not err by excluding defendant without an audio or video feed from a portion of the trial. In the unpublished portion of the opinion, we hold that the trial court did not err in other rulings challenged by defendant. We affirm the judgment.

## BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

A. *Denial of Defendant's Motion to Continue Trial**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Defendant's Removal from the Courtroom Without an Audio or Video Feed*

Defendant contends that the trial court violated his state and federal constitutional rights to a fair trial, due process, and effective assistance of counsel by not providing him with an audio or video feed to hear or observe the victim's testimony after the trial court excluded defendant from the courtroom. We disagree.

Defendant was charged with striking Christian Cornejo (Cornejo), his former girlfriend and mother of his child. She reported this incident, but later

---

[1] All statutory citations are to the Penal Code unless otherwise noted.

[2] The electronic transmission of the audio or visual events at the trial—presumably audio and video, or just audio.

*See footnote, *ante*, page 847.

recanted. Cornejo testified at the preliminary hearing that she was struck by others and had previously lied when she reported she was hit by defendant. Cornejo initially failed to appear at trial and could not be found to be served with a subpoena. After her preliminary hearing testimony was read to the jury, she appeared for the trial and testified as a witness. She reiterated that people other than defendant had assaulted her and that she had lied on prior occasions. Cornejo's telephone calls with defendant discussing the case had been recorded, and the prosecutor introduced into evidence a portion of the recording. Because the recordings of those jail conversations were provided to defense counsel shortly before trial, defendant sought a continuance of the trial so that the recordings could be transcribed. The trial court denied the continuance, and in the unpublished portion of this opinion, we determined that the denial did not constitute prejudicial error.

### 1. Standards of Review

"An appellate court applies the independent or de novo standard of review to a trial court's exclusion of a criminal defendant from trial, either in whole or in part, insofar as the trial court's decision entails a measurement of the facts against the law." (*People v. Waidla* (2000) 22 Cal.4th 690, 741 [94 Cal.Rptr.2d 396, 996 P.2d 46].) "We review a ruling on a mistrial motion for an abuse of discretion" (*People v. Lewis* (2008) 43 Cal.4th 415, 501 [75 Cal.Rptr.3d 588, 181 P.3d 947]), and we independently review orders denying a motion for new trial to determine if prejudicial trial error occurred (*People v. Ault* (2004) 33 Cal.4th 1250, 1261 [17 Cal.Rptr.3d 302, 95 P.3d 523]).

### 2. Applicable Law

"A criminal defendant, broadly stated, has a right to be personally present at trial under various provisions of law, including the confrontation clause of the Sixth Amendment to the United States Constitution, as applied to the states through the due process clause of the Fourteenth Amendment; the due process clause of the Fourteenth Amendment itself; section 15 of article I of the California Constitution; and sections 977 and 1043 of the Penal Code." (*People v. Waidla, supra,* 22 Cal.4th at p. 741.) But a defendant may be removed from the courtroom during trial in "[a]ny case in which the defendant, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that the trial cannot be carried on with him in the courtroom." (§ 1043,

subd. (b)(1); see *Illinois v. Allen* (1970) 397 U.S. 337, 343 [25 L.Ed.2d 353, 90 S.Ct. 1057]; *People v. Welch* (1999) 20 Cal.4th 701, 774 [85 Cal.Rptr.2d 203, 976 P.2d 754].)

### 3. *Background Facts*

When Cornejo was called to testify at trial, defendant said in open court, "They arresting my wife because she won't lie against me." The trial court told defendant, "Sir, you need to let your lawyer do your talking for you." Defendant replied, "I want the jurors to know what you all doing." The trial court then directed the jurors to go to the jury deliberation room, and the trial court admonished defendant not to speak out loud during the course of the proceedings unless he was testifying. The following exchange then occurred: "[Defendant:] You all trying to f--k me over. There's nothing else to it. [¶] [Trial court:] Your day is here today in court. This is your trial, sir. [¶] [Defendant:] I have the right to speak. [¶] [Trial court:] Speaking out in front of the jury is not going to help your cause. [¶] [Defendant:] Nothing going to help me because y'all going to f--k me." The trial court ordered defendant to be removed from the courtroom. Defendant stated, "I love you, Christian," and Cornejo replied, "I love you. Calm down, man."

The trial court granted defense counsel's request for time to calm defendant. After a recess, the trial court allowed defendant back in the courtroom, received assurances from defendant and his counsel that defendant would act appropriately and would not engage in any further outbursts, and instructed the jury to disregard defendant's outburst. Cornejo then resumed testifying.

Shortly thereafter, during a sidebar conference between counsel and the trial court, the court clerk told the trial court that defendant was talking to Cornejo, who was on the witness stand. The trial court directed the jurors to leave the courtroom and ordered defendant removed from the courtroom "based upon statements of misconduct by the deputy [sheriff] and the [court] clerk."

On the record, the bailiff, a sheriff's deputy, advised the trial court that defendant started to talk to Cornejo; he told defendant to stop talking; and Cornejo attempted to calm defendant. Defendant then commented to Cornejo about actor Mel Gibson and "other movie stars' sentences. How they were treated in trial." The bailiff told defendant to stop talking and put his hand on defendant's shoulder. The bailiff felt defendant starting to "tense up," so the bailiff handcuffed defendant because the bailiff was concerned defendant "was going to stand up or do something other than just be verbal with the witness."

Also on the record, a sergeant who was in the courtroom told the trial court that defendant looked at the jury and said, "They're trying to f--k me." A law clerk who was in the courtroom said that defendant told the jury, "They're trying to put me away for 17 years." It was reported that a law clerk said that she had heard defendant say something to the effect of "Stay hostile, baby," to which Cornejo responded, "I know what they're trying to do." The trial court made findings, pursuant to section 1043, subdivision (b)(1) that defendant was continually disruptive, had directly ignored the trial court's warnings, would continue to be disruptive, and there was no less drastic alternative to having defendant removed. The trial court stated, "The court orders [defendant's] removal, at least for this afternoon, at this point."

The jurors were brought back into the courtroom, and the trial court instructed the jury to disregard defendant's outburst. Defendant's counsel stated that because she was not able to transcribe the audio recordings of defendant's jail calls, she needed to rely on defendant to "do a proper presentation of the defense in this matter, and to properly cross-examine . . . Cornejo." Defendant's counsel stated that because defendant had been excluded from the courtroom, "the court is going to have to do either audio, or I would ask for video . . . ."

The trial court stated that audio or video was not available, but added, "I'll absolutely give you the opportunity to meet and confer with him as regularly as you need to." Defendant's counsel stated, "I believe that the defendant has a right to at least listen or hear the proceedings and the testimony against him. [¶] And so I think that the court is required to, at the minimum, have the proceedings piped in . . . ." Defendant's counsel also stated, "I would just only ask that the court permit audio or video for [defendant]. . . . I understand [section] 1043 says if they're disruptive, they can be precluded from the courtroom." Defendant's counsel argued defendant had a due process right to "help [her] . . . present a defense." The trial court stated, "If I had the ability to pipe it in, I would. I don't. I don't have the ability to do it. This building was built in the 1960's. We don't have external jacks that you can just plug a speaker into a wall. [¶] It's my understanding that we don't have the facilities available. I did call, and I left a message with . . . one of our managers down in our facilities division. [¶] . . . [¶] I just spoke to . . . our director of facilities. She's indicated that we do not have the resources to be able to do that. [¶] She did offer to contact the internal services to determine whether they have the facilities to be able to do it. [¶] However, their facilities are not available today, and they're closed tomorrow, and Monday is a holiday. So probably the earliest would be Tuesday, if they can do it. And I don't know that they can. But if they could, it would be Tuesday." Cornejo resumed her testimony that day without defendant being present in the courtroom. Cornejo was ordered to remain "on call" to testify at the request of either defendant or the prosecution.

The next day, defendant was allowed back in the courtroom and moved for a mistrial because, inter alia, he had not been permitted to hear Cornejo's testimony. Defendant's counsel stated, "I'm not arguing that [defendant] shouldn't have been excluded from the courtroom. That's not my argument. [¶] My argument is that he needed to be present for the testimony, whether it be audio or visual, in some type of manner in which he could have listened to the trial." The trial court denied defendant's motion for mistrial, stating that Cornejo was still on call and that defendant could have her come back and testify further.

At the conclusion of the trial testimony, defendant filed a motion for new trial contending that although there was no statute, "Los Angeles County Court Rule[,] or Los Angeles Court directive regarding audio/video feeds being used when a defendant is removed from the courtroom," the trial court's denial of his request for an audio or video feed violated defendant's due process rights and his rights under the Sixth Amendment to the United States Constitution.[5] Defendant's motion for new trial was also based on the trial court's denial of defendant's request for a one-day continuance so defendant's counsel and the trial court could "try to obtain the audio equipment."

The following exchange occurred at the hearing on defendant's motion for new trial: "[Defendant's counsel:] The issue here really, Your Honor, is not whether the court could exclude [defendant]. [Section] 1043 basically indicates that [the] court does have a power to do that . . . . [¶] . . . [¶] The question becomes once defendant is excluded, does the court—is there any additional requirement that the court has to do under due process and fundamental fairness to make sure that the defendant at least gets to hear or be able to communicate with his attorney, and to be able to at least tell his attorney or advise as to the testimony that's being presented. [¶] I think the key here, Your Honor, is whether or not the court had to pipe in either an audio or video of the proceedings. [¶] Now, there is no actual statute or court rule that actually applies to that. [¶] . . . [¶] Basically, we're saying if you can pipe it in, pipe it in. And I think the question here is we didn't have the equipment here present in the courthouse. [¶] However, defense counsel asked for just a short continuance just for the afternoon session so we could acquire that equipment. [¶] . . . I believe we got the equipment, or was available the next day. [¶] [Trial court:] It was installed the next day. But at the time that the court had made the request for the audio equipment, we did

---

[5] The Sixth Amendment provides in part, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . and to have the assistance of counsel for his defense."

not have an ETA as to when it could have been provided. [¶] We were told that it's not available within our building. A call went to I think County ISD, which is internal services department, to find out whether or not an electrician or sound man is going to be able to come out and install that. [¶] [Defendant's counsel:] And I was also going to call our tech people to see if there was some type of equipment that we could provide to do that. [¶] [Trial court:] Sure. [¶] [Defendant's counsel:] Defense had asked for a short continuance just to the next morning so we could try to acquire that information, or get that equipment. And the court decided to proceed with the trial. [¶] . . . [¶] . . . Because we were placed at such a disadvantage, I think that fundamental fairness and due process requires . . . a new trial. [¶] . . . [¶] [W]e made the objection, and it was a continuous objection. We had asked the court to get us the equipment or to allow us to try and get the equipment. [¶] I had actually called our tech people at the public defender's office to see if we had the ability to get that equipment here. [¶] And I think we . . . just asked for a short continuance. Just to the—[¶] [Trial court:] Well, wait a minute. [¶] What did your tech people tell you? [¶] [Defendant's counsel:] Our tech people said that they have done it downtown, and that they were going to call around to see if he could get the equipment. [¶] [Trial court:] And what information did you relay to the court about your ability to get an alternative equipment set up in a short period of time? [¶] [Defendant's counsel:] Well, I had done it—I wasn't able, obviously, to make that call until after we had recessed for the afternoon and the witness [was] already on the stand. [¶] But at the time I got back here in court, the situation was corrected, and that the court had learned we were able to get the equipment. [¶] And the defendant stated that he could comport his behavior. So it wasn't necessary. I had just called them, and a late-night call when I got back to my office. [¶] [Trial court:] Okay. What about other alternative equipment that may have been at your disposal? Tape recorder? Did you ask to bring in a tape recorder to tape-record the testimony of the witness? [¶] [Defendant's counsel:] I did not, Your Honor. [¶] [Trial court:] How about a request for a transcript from the court reporter of the testimony of the witness to be able to go over it with the defendant? [¶] Those would have been other options that could have been made available. [¶] [Defendant's counsel:] That's true. [¶] [Trial court:] Look, I think here's the bottom line. I don't think that . . . any of the . . . cases requires that the court have an audio hookup. [¶] I understand that your argument is that as a matter of due process, defendant has a right to understand what the allegations are against him. [¶] But I think that there are also certain practical limitations that are involved. Clearly, the defendant needed to be removed from the courtroom. [¶] . . . I did give the defendant the opportunity to be able to return to the courtroom; not once, twice. [¶] Shortly after the first time where he promised that he would be good, he came back and he was even more disruptive and more disrespectful, and candidly, more corrupt to the judicial process. [¶] But here's the practical issue. You're

sitting in a building that was built in 1966, I believe. First opened in 1969. We don't have the luxury of speakers in our lockup. We don't have video feeds. [¶] . . . [¶] You also haven't addressed the issue as to whether or not the defendant was, in essence, prejudiced by it. You've made this broad statement to the effect that because he wasn't here to watch the witness and . . . get these nuances that presumably would go over your head or you wouldn't see, that he was prejudiced by it. [¶] This same witness also testified at the preliminary hearing. Her trial testimony was not that much different than the preliminary hearing testimony in which she testified that it wasn't the defendant that struck her, it was also this woman who struck her with a cell phone in her hand causing the injury to her head. [¶] So I'm not sure how much different that actual testimony would be between the prelim and the trial and how the defendant's presence would have actually been able to help you. [¶] But I would also note for the record that this same witness is somebody that had to have two body attachments issued for her; who physically had the investigating officers go out to her—I think it was her place of business, or maybe it was the school that she was at, and drag her in here. [¶] So in essence, you're saying that I should have delayed the case another day. And the problem is that I may have lost the only opportunity for that witness to be presented to this jury, because she had a bad track record of coming back to court."

In denying defendant's motion for new trial, the trial court stated, "I don't find that the law mandates a separate sound system to an excluded defendant. I certainly attempted to assist the defense. I even indicated in the transcript that you'd be able to break as frequently as you need to in order to be able to discuss the examination with the defendant. [¶] You asked for a recess to try to calm him down. I granted all of those requests. [¶] I gave him every opportunity to be able to come out here and participate. Unfortunately for him, whether he was incapable [of] controlling himself or he chose not to control himself, it didn't work out for him. [¶] . . . [¶] [D]efendant was excluded due to disruptive behavior. The court admonished the jury not to permit the defendant's absence in the case to influence them. [¶] . . . [¶] I don't think defendant can reasonably insist that the system reacts immediately to accommodate him in this matter, because we don't have the ability to immediately respond to that. [¶] I think we took appropriate steps to try and get a sound system installed for him. But I don't think that the court is required to delay the case indefinitely until that sound system actually occurs. [¶] . . . [¶] The motion for new trial is respectfully denied."

#### 4. *Analysis*

##### a. *Forfeiture*

The Attorney General contends that defendant forfeited his claims that his state and federal constitutional rights to a fair trial and effective assistance of counsel have been violated because defendant did not object in the trial court on those grounds. We disagree.

A party may not raise an argument on appeal that he or she did not raise before the trial court. (*People v. Clark* (1993) 5 Cal.4th 950, 988, fn. 13 [22 Cal.Rptr.2d 689, 857 P.2d 1099], disapproved on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11].) Defendant here raised his constitutional claims before the trial court. Defendant objected in the trial court that pursuant to his right to a fair trial, he needed to hear Cornejo's testimony and be able to consult with his attorney about the testimony that was being presented. Defendant's counsel stated that because she was not able to transcribe the audio recordings of defendant's jail calls, she needed to rely on defendant to "do a proper presentation of the defense in this matter, and to properly cross-examine . . . Cornejo." She asserted that defendant was necessary to "help" her "present a defense," and defendant had a due process right to be able to hear and advise his attorney about the testimony that is being presented. Defendant contended that the trial court's denial of his request for an audio or video "feed" violated defendant's rights under the Sixth Amendment—which includes the right to assistance of counsel. Defendant preserved his claim of a violation of his constitutional rights.

##### b. *No Error*

The trial court did not err by excluding defendant from the courtroom without an audio or video feed to hear or observe Cornejo's testimony. Defendant does not challenge the order excluding him from the courtroom; he challenges the trial court's failure to provide him with an audio or video feed in his absence from the trial.

As defendant concedes, there is no actual statute or court rule that requires a trial court to provide a defendant with an audio or video feed of the trial testimony when a defendant is removed from the courtroom. He relies, however, on Justice Brennan's concurring opinion in *Illinois v. Allen, supra*, 397 U.S. at page 351 (conc. opn. of Brennan, J.), stating that, "Once the court has removed the contumacious defendant, it is not weakness to mitigate the

disadvantages of his expulsion as far as technologically possible in the circumstances." Justice Brennan did not state there was a requirement that the trial court mitigate the disadvantages by any and all technological means. He merely suggested the use of technology that was "possible in the circumstances." Justice Brennan also stated in this connection that "when a defendant is excluded from his trial, the court should make reasonable efforts to enable him to communicate with his attorney and, *if possible*, to keep apprised of the progress of his trial." (*Ibid.* (conc. opn. of Brennan, J.), italics added.)

Other jurisdictions have determined that a defendant is not constitutionally entitled to an audio or video feed of the trial testimony when he or she has been excluded from the courtroom during trial. The court in *Bell v. Evatt* (4th Cir. 1995) 72 F.3d 421 stated, "We have never held . . . that a defendant who has been removed from the courtroom because of his disruptive behavior has a right to an audio hook-up. We see no reason to create such a right." (*Id.* at p. 432; see *Jones v. Poole* (S.D.N.Y., Aug. 9, 2005, No. 04 Civ. 0303 (SHS) (THK)) 2005 U.S.Dist. Lexis 46297, pp. *26–*27; *United States v. Solomon* (S.D.N.Y. May 8, 1997, No. 95 Cr. 154 (LAP)) 1997 U.S.Dist. Lexis 6246, p. *21.)

There were practical limitations on complying with defendant's request to have an audio or video feed of the trial testimony when, during Cornejo's testimony, he was excluded from the courtroom for less than one day. Upon defendant being removed from the courtroom, the trial court stated that it did not have the ability to "pipe in" the audio of the trial for defendant and that after attempting to confer with the trial court's "internal services," the trial court would not know until the following Tuesday whether it was possible to provide defendant with the requested audio feed. There was a risk that if the trial court continued the trial, Cornejo would not complete her testimony. On a number of occasions, she had failed to appear, body attachments against her had been issued, and the prosecutor's investigator was required to locate her and physically bring her to the court.

In addition, although defendant contends that he may have been able to arrange to have audio equipment installed for him within a short period of time, his counsel did not advise the trial court of this possibility because counsel's "tech people" had not determined whether it was possible until after defendant had been allowed back into the courtroom and the issue of an audio feed to defendant of the trial testimony was moot.

Also, defendant's counsel did not seek permission to tape-record the testimony of the witness or request a transcript from the court reporter of Cornejo's testimony to enable defense counsel to review the testimony with

defendant. The trial court advised defendant's counsel, "I'll absolutely give you the opportunity to meet and confer with him as regularly as you need to." Defendant's counsel could have spoken to defendant before the conclusion of Cornejo's testimony; and because Cornejo was placed "on call" upon the conclusion of Cornejo's testimony, defendant's counsel could have conferred with defendant and could have had Cornejo testify further.

### c. *Prejudice*

The exclusion of defendant for a portion of the trial without an audio or video feed did not prejudice defendant. Defendant concedes that the denial of a defendant's constitutional right to be present at a critical stage of his criminal proceedings is generally subject to harmless error analysis. (*People v. Disandro* (2010) 186 Cal.App.4th 593, 605, fn. 8 [111 Cal.Rptr.3d 857].) As the trial court observed, defendant was not prejudiced by the trial court excluding him from the courtroom without an audio or video feed because Cornejo's trial testimony was substantially the same as she had previously given during the preliminary hearing. As a result, Cornejo's trial testimony should not have come as a surprise to defendant's counsel, and an appropriate cross-examination of Cornejo could have been conducted without defendant having an audio or video feed of the trial testimony.

Defendant contends on appeal that he was prejudiced because defendant's cross-examination of Cornejo was "more damaging to [defendant] than her testimony in the preliminary hearing." He argues that because he was denied access to the audio of Cornejo's testimony, his counsel's cross-examination of Cornejo "inadvertently elicited that [defendant] was previously in custody by asking why the pair broke up, when they had not in fact broken up, . . . [and] were merely separated because [defendant] went to jail." There is nothing in the record to suggest that had defendant been provided with an audio or video feed of Cornejo's testimony, he would have indicated to his counsel not to ask Cornejo why she and defendant had "broken up, or his counsel would not have asked that question." There is no indication that defendant's counsel was unable to confer with him prior to cross-examining Cornejo about the subject matter. The trial court's removal of defendant from a portion of the trial without audio or video access to the proceedings did not constitute prejudicial error.

### C. *Equal Protection Challenge to the October 2011 Amendment to Section 4019**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 847.

## DISPOSITION

The judgment is affirmed.

Armstrong, Acting P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 17, 2013, S208579.