Filed 7/11/13  P. v. Sanchez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADRIAN P. SANCHEZ,<br><br>    Defendant and Appellant. | B241883<br><br>(Los Angeles County<br>Super. Ct. No. KA095889) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Mike Camacho, Jr., Judge.  Affirmed.

David H. Goodwin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, David E. Madeo, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Adrian P. Sanchez (defendant) was convicted of two counts of a lewd act upon a child (Pen. Code, § 288, subd. (a)[1]), kidnapping (§ 207, sub. (a)), unlawful sexual intercourse (§ 261.5, subd. (d)), aggravated sexual assault of a child (rape) (§ 269, subd. (a)(1)), sodomy in violation of (§ 286, subd. (c)(2)(c)), and sexual penetration upon a child (§ 289, subd. (a)(1)(C)(5)). On appeal, defendant contends that the trial court erred in instructing the jury with CALCRIM Nos. 1111, 1000, 1030 and 1045; denied his constitutional right to due process and a fair trial by refusing his request for a pinpoint instruction on his propensity to act in a certain manner; and denied his constitutional due process rights by denying his motion for a new trial because law enforcement officers interfered with defense efforts to contact witnesses before trial. We affirm the judgment of conviction.

## BACKGROUND

### A.      Factual Background

#### 1.      *Prosecution Evidence*

Patricia was 16 years old at the time of trial. She lived in El Monte with her sister, M., her brother, Alejandro, and their mother. Defendant lived next door to Patricia's family for several years.

Defendant is about eight years older than M., who is almost seven years older than Patricia. In or about 2002, defendant started dating M., and they dated for about 10 years. M. was 12 years old she and defendant would kiss, hold hands, and defendant may have touched her breast. When M. was about 13 years old, she considered defendant her boyfriend; defendant began having sexual relations with M. when she was 15 year old.

---

[1]      All statutory citations are to the Penal Code unless otherwise noted.

In about 2006, defendant moved in with Patricia and her family. Defendant did not do so because the family was in need of financial assistance.

On July 1, 2009, when Patricia was 13 years old, her mother died. M. and defendant both worked to pay the household bills, but because at that time M. was only earning approximately 210 dollars per week, the rent was primarily paid by defendant. M. gave the money she earned to defendant so that he could pay the bills. Defendant rented two of the bedrooms in the house to his friends.

About a week after Patricia's mother died, defendant touched Patricia inappropriately on her breast, and pulled Patricia's pajama bottoms down. She was scared and told defendant to stop, but did not want to say it loudly because her brother was sleeping in the same room and she was embarrassed. Defendant opened Patricia's legs with his hand, placed his penis in Patricia's vagina, and eventually ejaculated outside of her vagina. Defendant told Patricia that he loved her and she was not to tell anyone what happened. Defendant said that if she told anyone, he would leave her and M. and move out of the house. Defendant said that they would not be able to pay the rent and would be homeless.

When Patricia was about 13 years old, defendant put his penis inside her anus for the first time. Defendant did that a total of about five or six times.

When Patricia was 14 years old, defendant penetrated her vagina with his finger. Multiple times defendant grabbed Patricia hand and made her touch his penis inside his pajamas. Defendant would also tell Patricia to put her mouth on his penis, and she did so because she was scared. Twice defendant ejaculated in Patricia's mouth. Defendant also put his mouth on Patricia's vagina.

Patricia tried to push defendant away whenever he touched her. She told him to stop, but he continued. Defendant regularly told Patricia that if she told anyone what he did to her, defendant would move out, and her sister would not be able to support her family.

In February or March 2011, outside her house, Patricia told defendant that she did not want to have sex with him. Defendant was in the driver's seat of his truck, and

3

Patricia was standing outside the passenger seat.  Defendant became angry and forcibly pulled Patricia into the truck.  She tried to get out, but defendant pulled her shirt, ripping it, and grabbed her hair.  Defendant drove onto the freeway and said that, if she was not going "to be his," then she was not going to be with anyone else; defendant threatened to drive into oncoming traffic to kill them both.  Patricia was scared and opened the door to jump out of the moving truck.  Defendant grabbed her arm and held her.  Defendant exited the freeway, stopped the vehicle, started crying, and told Patricia that he loved her.  Patricia was still scared, but she agreed to have sex with him again because she was afraid that he was going to leave.

Defendant had sex with Patricia over 70 times between 2009 and 2011.  Patricia estimated that it occurred approximately once a week.  Patricia did not want to have sex with defendant and did not want to be his girlfriend.

When Patricia was 15 years old, she told her school counselor that defendant was abusing her, and the counselor called the police.  On October 20, 2011, Patricia spoke to the police about defendant's sexual abuse over the last two years.
Defendant was arrested that month.  The last time that defendant sexually abused Patricia was the week before he was arrested.

On October 20, 2011, law enforcement officers interviewed defendant, and the interview was recorded and played for the jury.  Defendant said that he and Patricia were boyfriend and girlfriend after her mother died.  He admitted to touching Patricia sexually and performing oral sex on her when she was 15 years old, and that he had sexual intercourse with Patricia once or twice a week for a year and a half.  He said he never forced Patricia to have sex.  Patricia performed oral sex on him at least ten times, and he had anal sex with her several times.  Defendant was also having sex with M. during this time.  Defendant said that M. was unable to give him children, so he had to find a way to have a child with someone else.

Lucia is the aunt of Patricia and Alejandro, and in October 2011, Patricia and Alejandro went to live with Lucia.  Later, a defense investigator asked Lucia for

4

permission to speak with either Patricia or Alejandro, and Lucia refused to allow that. Alejandro later refused to speak with the investigator.

### 2. *Defendant's Evidence*

Defendant did not testify and presented no evidence.

### B. Procedural Background

The District Attorney of Los Angeles County filed an information charging defendant with lewd act upon a child, in violation of section 288, subdivision (a) (count 1), forcible lewd act upon a child in violation of section 288, subdivision (b)(1) (count 2), kidnapping in violation of section 207, subdivision (a) (count 3), unlawful sexual intercourse in violation of section 261.5, subdivision (d) (count 4), aggravated sexual assault of a child (rape) in violation of sections 269, subdivision (a)(1) (count 5), aggravated sexual assault of a child (sodomy) in violation of section 269, subdivision (a)(3) (count 6), and aggravated sexual assault of a child (§ 289(a)) in violation of section 269, subdivision (a)(5) (count 7). Counts 6 and 7 were modified as sodomy in violation of section 286, subdivision (c)(2)(c), and sexual penetration upon a child in violation of section 289, subdivision (a)(1)(C), respectively.

Following a trial, on count two the jury found defendant guilty of lewd act upon a child, in violation of section 288, subdivision (a), and guilty as charged on the remaining counts. The trial court sentenced defendant to a total determinate term of 28 years, eight months to life in state prison, plus 15 years to life in state prison. On count 5, the court imposed a 15-years-to-life term. The court imposed a consecutive six-year term on count 1, a concurrent six-year term on count 2, a consecutive term of one year and eight months on count 3, a concurrent three-year term on count 4, a consecutive 11-year term on count 6, and a consecutive 10-year term on count 7.

**DISCUSSION**

### A.     CALCRIM Nos. 1111, 1000, 1030 and 1045

Defendant contends that the trial court erred in instructing the jury with CALCRIM Nos. 1111, 1000, 1030, and 1045.  According to defendant, because CALCRIM Nos. 1111, 1000, 1030, and 1045 provide that the relevant wrongful acts can be accomplished by "fear" if the victim or another person "is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it," they "negate[d] the need for the offense[s] [set forth in counts 2, 5, 6, and 7, respectively] to have been accomplished by means of 'fear of immediate and unlawful bodily injury.'"

Defendant was not prejudiced as to his claim of instructional error as to CALCRIM Nos. 1111, and he forfeited his claim of error as to CALCRIM Nos. 1000, 1030 and 1045.  In any event, these instructions were proper statements of the law.

#### 1.     *Standard of Review*

We review defendant's claims of instructional error de novo.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1210; *People v. Sweeney* (2009) 175 Cal.App.4th 210, 223.) "'The proper test for judging the adequacy of instructions is to decide whether the trial court "fully and fairly instructed on the applicable law . . . ."  [Citation.]  "'In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole … [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given. [Citation.]'"  [Citation.]  "Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation."  [Citation.]'  (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111-1112 [93 Cal.Rptr.2d 433].)"  (*People v. Johnson* (2009) 180 Cal.App.4th 702, 707.)

6

### 2. *Relevant Proceedings*

The trial court discussed instructions on each offense. Regarding count 2—forcible lewd act upon a child, in violation of section 288, subdivision (b)(1)—the trial court discussed CALCRIM No. 1111, which states in part, "In committing the act, the defendant used force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the child or someone else." Defense counsel objected that violence, duress, menace, and fear of bodily injury should be eliminated from the jury instruction. The trial court agreed to eliminate from the jury instruction the element of defendant using duress and menace, but that it would conduct additional research regarding the instruction.

Regarding count 5—aggravated sexual assault of a child, in violation of section 269, subdivision (a)(1)—the trial court discussed CALCRIM No. 1000 concerning rape by force, an element of count 5. CALCRIM No. 1000 states in part, "The defendant accomplished the intercourse by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the woman or to someone else." The trial court stated that it would eliminate from the jury instruction the reference to violence, duress and menace as means that defendant used to commit the crime, leaving only force and fear of bodily injury. Defense counsel stated that this modification was acceptable.

On count 6, sodomy, in violation of section 286, subdivision (c)(2)(C), defense counsel suggested that the trial court utilize CALJIC No. 10.59.8 rather than CALCRIM No. 1030 because the CALCRIM instruction did not include the age-range elements for this particular crime. The trial court suggested modifying CALCRIM No. 1030 to include the additional age-range elements. Defense counsel also requested that the trial court instruct the jury with CALJIC No. 10.51, for count 7, sexual penetration upon a child, in violation of section 289, subdivision (a)(1)(C), rather than with CALCRIM No. 1045, for the same reason. The trial court modified the CALCRIM instructions for counts 6 and 7 (CALCRIM Nos. 1030 and 1045, respectively) to include that "the other person, a minor who was 14 years of age or older, did not consent to the act." Defense counsel agreed to this modification.

The trial court instructed the jury with the following modified jury instructions: CALCRIM No. 1111 regarding count 2 for a forcible lewd act upon a child; CALCRIM No. 1000 concerning rape by force, an element of count 5 for aggravated sexual assault of a child (CALCRIM 1123); CALCRIM No. 1030 regarding count 6 for forcible sodomy; and CALCRIM No. 1045 regarding count 7 for forcible sexual penetration. Each of the jury instructions provided that defendant can accomplish the relevant wrongful act by "fear of immediate and unlawful bodily injury" to the victim or another, and the wrongful act can be accomplished by "fear" if the victim or another person "is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it."

### 3.    Analysis

#### i.    Prejudicial Error Regarding CALCRIM No. 1111

Defendant contends that the trial court erred in instructing the jury with CALCRIM No. 1111. Defendant did not establish that he was prejudiced by such a claimed error. (*People v. Hines* (1997) 15 Cal.4th 997, 1080 ["Absent prejudicial error or legal insufficiency of evidence, this court must uphold the jury's verdict"].)

The trial court instructed the jury with CALCRIM 1111, as modified, as to count 2 for "lewd or lascivious act by force or fear on a child under the age of 14 years in violation of . . . section 288, subdivision (b), subdivision (1)." The jury, however, found defendant not guilty of that charge, and instead convicted him under count 2 for the lesser offense of performing a lewd act upon a child, in violation of section 288, subdivision (a). Plaintiff has not established that even if the trial court erred in instructing the jury with CALCRIM No. 1111, it was prejudicial error. Even if defendant would have been prejudiced by a purported error in instructing the jury with CALCRIM No. 1111, however, as discussed *post*, the trial court did not err.

8

ii.     Forfeiture

The Attorney General contends that defendant has forfeited his instructional claims of error regarding CALCRIM Nos. 1000, 1030 and 1045.  We agree.

"Ordinarily, an appellate court will not consider a claim of error if an objection could have been, but was not, made in the lower court.  [Citation.]  The reason for this rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.'  [Citations.]  '[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error.' [Citation.]"  (*People v. French* (2008) 43 Cal.4th 36, 46.)  The forfeiture rule specifically applies to a defendant who fails to object to a jury instruction on the grounds urged on appeal. "Defendant's failure to object to the instruction below . . . forfeits the claim on appeal.  [Citations.]"  (*People v. Virgil* (2011) 51 Cal.4th 1210, 1260; *People v. Stone* (2008) 160 Cal.App.4th 323, 331.)

On appeal, defendant contends that the trial court erred in instructing the jury with CALCRIM Nos. 1111, 1000, 1030, and 1045, as modified, because they provide that the relevant wrongful acts can be accomplished by "fear" if the victim or another person was in reasonable fear, or was in unreasonable fear and the defendant knows that unreasonable fear and takes advantage of it.  Defendant, however, only objected to the fear element remaining in CALCRIM 1111; he did not do so regarding CALCRIM Nos. 1000, 1030, and 1045.  He therefore forfeited his claims that the trial court erred in instructing the jury with those latter instructions.

An appellate court may review a jury instruction in the absence of objection if the substantial rights of the defendant are affected.  (§ 1259; *People v. Flood* (1998) 18 Cal.4th 470, 482, fn. 7; *People v. Anderson* (2007) 152 Cal.App.4th 919, 927.)  Because, as discussed below, the trial court did not err in instructing the jury with CALCRIM Nos. 1000, 1030 and 1045, as modified, defendant's substantial rights were not affected.

9

### iii. Instructing the Jury with CALCRIM Nos. 1111, 1000, 1030, and 1045

Defendant contends that CALCRIM Nos. 1111, 1000, 1030 and 1045, as given by the trial court, "were constitutionally flawed because they removed an essential element of the offense from the jury's consideration, in violation of the Sixth Amendment right to a jury trial and the Fifth and Fourteenth Amendment rights to due process of law." We disagree.

Each of the challenged jury instructions defines offenses that punish a defendant who accomplishes the relevant wrongful act by "fear of immediate and unlawful bodily injury" to the victim or another. Because the jury instructions state that the wrongful act can be accomplished by "fear" if the victim or another person "is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it," according to defendant, they "negate[] the need for the offenses to have been accomplished by means of 'fear of immediate and unlawful bodily injury.'" Defendant argues that the instructions allowed the jury to convict him based on a finding that the victim (or the relevant other person) was simply afraid of something other than immediate bodily injury, such as fear of financial hardship.

The jury was also instructed with CALCRIM 200 stating that they were to consider the jury instructions as a whole, and that whether some instructions applied would depend on what the jury found to be the facts. "We presume that the jury understood and followed the instructions. (*People v. Stitely* [(2005)] 35 Cal.4th [514,] 559.)" (*People v. Jablonski* (2006) 37 Cal.4th 774, 834; *People v. Cline* (1998) 60 Cal.App.4th 1327, 1336.)

The element of fear of immediate and unlawful bodily injury has an objective as well as a subjective component. The subjective component "asks whether a victim genuinely entertained a fear of immediate and unlawful bodily injury sufficient to induce her to submit to sexual intercourse against her will. In order to satisfy this component, the extent or seriousness of the injury feared is immaterial." (*People v. Iniguez* (1994) 7 Cal.4th 847, 856; *People v. Barnes* (1986) 42 Cal.3d 284, 304.)

10

Defendant erroneously reads the portion of the jury instruction that the victim (or another person) is deemed to be in fear if she "is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it," in isolation from the remaining portions of the instructions. Defining that the fear element can be satisfied by one either being objectively or subjectively fearful does not "negate[]" the requirement, specified in each of the challenged jury instructions, that the fear must be of an immediate and unlawful bodily injury. The trial court did not err in instructing the jury with CALCRIM Nos. 1111, 1000, 1030 and 1045, as modified.

## B.      Pinpoint Instruction

Defendant contends that the trial court denied his constitutional right to due process and a fair trial by refusing his request for a pinpoint instruction on his propensity to act in a certain manner. We disagree.

### 1.      Relevant Proceedings

Defendant's counsel requested that the trial court instruct the jury with CALCRIM No. 350 on the character of the defendant, which instruction states in relevant part, "You have heard character testimony that the defendant (is a _____ <insert character trait relevant to crime[s] committed> person/ [or] has a good reputation for _____ <insert character trait relevant to crime[s] committed> in the community where (he/she) lives or works). [¶] . . . [¶] You may take that testimony into consideration along with all the other evidence in deciding whether the People have proved that the defendant is guilty beyond a reasonable doubt."

M. testified that although she had sexual relations with defendant, if she did not want to engage in any sexual acts, including sodomy, defendant would not force her to do it. Defendant never threatened to leave her or her family if she did not engage in a sexual act. Defendant's counsel argued that this supported defendant having a character trait that he would not force Patricia to have sex with him when she did not want to do so.

11

The prosecutor argued that defendant's acts with M. were not relevant because she was an adult and was in a romantic relationship with defendant.

The trial court denied the requested instruction, finding that "although it is a legitimate issue to argue [to the jury, that because defendant did not force M. to perform sexual acts, he would not force Patricia to have sex with him when she did not want to] but not in the sense of [it being a] character trait. . . . Force can be something implied. That's why we have issues of duress and coercion here, manipulation of a young child to consent to certain acts that a child would not otherwise do had . . . she not been in that environment. In this case, I'm thinking about the victim's concern that if she didn't acquiesce to the defendant's demands that she and her family would be left out on the streets or something to that extent. I don't think this is the type of character evidence I need to instruct the jury on. I think it would be more confusing anyway."

### 2. Analysis

"A trial court must instruct the jury . . . on all general principles of law . . . '"that are necessary for the jury's understanding of the case." [Citation.] In addition, "a defendant has a right to an instruction that pinpoints the theory of the defense . . . ."'" [Citation.] The court may, however, 'properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation].' [Citation.]" (*People v. Burney* (2009) 47 Cal.4th 203, 246.)

A defendant may rebut with character evidence the evidence introduced by the prosecution of defendant's uncharged sexual offenses to show the defendant has a disposition to commit sex offenses. (*People v. Callahan* (1999) 74 Cal.App.4th 356, 374-379.) Defendant was M.'s "boyfriend" commencing when she was 13 years old. The prosecution introduced evidence that defendant began having sexual relations with M. when she was about 15 years old. The jury was instructed with CALCRIM 1191

12

regarding evidence of uncharged sex offenses.[2]  Defendant does not contend that the trial court erred in instructing the jury with CALCRIM 1191.

"The term 'character' or 'character evidence' is not defined in the Evidence Code, but the term 'character' has been described as 'the tendency to act in a certain manner under given circumstances.'"  (*People v. Callahan*, *supra*, 74 Cal.App.4th at p. 375, citing *People v. Shoemaker* (1982) 135 Cal.App.3d 442, 446, fn. 2.)  "[C]haracter evidence . . . is limited to evidence of the character or trait of character relevant to the offense charged."  (*People v. Taylor* (1986) 180 Cal.App.3d 622, 629.)

The trial court had the discretion to determine that evidence defendant did not force M. to have sexual intercourse is not relevant to whether he would force Patricia to have sex with him.  According to the prosecution, defendant coerced Patricia to acquiesce to his sexual demands based on the threat that if she refused his demands he would leave and she and her family would suffer a financial hardship.  That defendant did not threaten M. that he would leave her or her family if she did not engage in a sexual act is not probative of whether defendant made that threat to Patricia.  The circumstances were

---

[2]     The trial court instructed the jury with CALCRIM 1191, as modified, as follows: "The People presented evidence that the defendant committed the crime of  lewd act upon a child, in violation of Penal Code section 288, subdivision (a) that was not charged in this case.  This crime is defined for you in these instructions.  [¶]  You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offense.  Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.  [¶]  If the People have not met this burden of proof, you must disregard this evidence entirely.  [¶]  If you decide that the defendant committed the uncharged offense, you may but are not required to conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the offenses charged here.  If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of the offenses.  The People must still prove each charge beyond a reasonable doubt.  [¶]  Do not consider this evidence for any other purpose."

different. Had defendant threatened M. to leave her or her family, it would not be equivalent to making such a threat to Patricia.

When defendant and M. began having sexual relations, M.'s mother was alive and defendant was not supporting the family. M., almost seven years older than Patricia, was 20 years old when her mother passed away and defendant started helping to support the family. By contrast, when defendant began to sexually abuse Patricia, Patricia was 13 years old, it was after the mother died, and defendant was helping to support the family. Any threat by defendant to M. before her mother died would not impact the family's financial stability. Any threat by defendant to M. after her mother died would not have the same impact as on a 13-year-old child because at the time M. was at least twenty years old and, unlike a minor child, had some control over the family's financial stability.

In addition, defendant's sexual abuse of Patricia was based on fear and duress. The fact that defendant did not physically force M., his adult girlfriend, to engage in sexual acts did not support his defense that he never sexually abused Patricia, a minor, by means of fear or duress.

The trial court did not err in refusing to instruct the jury with CALCRIM 350 because it was not relevant and was potentially confusing. (*People v. Burney*, *supra*, 47 Cal.4th at p. 246.)

## C. Impeding Defendants Efforts to Contact Witnesses

Defendant contends that reversal is required because his state and federal constitutional due process rights and right to effective counsel were violated by law enforcement officers who interfered with defense efforts to contact witnesses before trial. We disagree.

### 1. Standard of Review

14

"[W]e independently review orders denying a motion for new trial to determine if prejudicial trial error occurred (*People v. Ault* (2004) 33 Cal.4th 1250, 1261 [17 Cal.Rptr.3d 302, 95 P.3d 523])." (*People v. Mayham* (2013) 212 Cal.App.4th 847, 850.)

### 2. *Relevant Proceedings*

Lucia testified at trial utilizing the services of a Spanish-language interpreter. In October 2011, Lucia's niece, Patricia, and Lucia's nephew, Alejandro, came to live with Lucia. Before trial, a defense investigator contacted Lucia and asked to speak with Patricia and Alejandro about the case. Lucia had her daughter call El Monte Police Department Detective Carter, the investigator on defendant's case, to ask if she should allow defendant's investigator to speak with Patricia and Alejandro. After speaking with the detective, Lucia's daughter told Lucia that "they shouldn't talk to anyone." Lucia testified that she did not personally speak with Detective Carter and does not know if those were his words. Based on what Lucia's daughter told her after her conversation with Detective Carter, Lucia did not allow the investigator to speak with Patricia. Because Alejandro was an adult—then 18 years old—Lucia asked Alejandro if he wanted to be interviewed, and he said no. Lucia also refused to be interviewed. On March 13, 2012, the defense investigator contacted Alejandro, and Alejandro declined to discuss this matter with him.

Defendant filed a motion for new trial alleging, inter alia, police misconduct in preventing Patricia and Alejandro from speaking to the defense investigator before trial denied him his due process rights. The prosecutor opposed the motion stating, "Following receipt of the defendant's motion for a new trial, investigators from the District Attorney's Office contacted Marlin . . ., Lucia['s] . . . daughter. Marlin told [one of the investigator's] that Det. Carter told her the children did not have to talk to the defense investigator if they did not want to and they were not obligated to speak with the investigator. Marlin interpreted this response to mean her mother should not allow the children to be interviewed and instructed her accordingly, which is consistent with Lucia's trial testimony." The trial court denied defendant's motion.

### 3. *Analysis*

"'The requirement of the Fourteenth Amendment is for a fair trial'; the due process clause 'prohibits the conviction and incarceration of one whose trial is offensive to the common and fundamental ideas of fairness and right.' Compliance with this standard required that appellant, charged with a capital offense, be represented at trial by counsel." (*Brubaker v. Dickson* (9th Cir. 1962) 310 F.2d 30, 37; see *People v. Staten* (2000) 24 Cal.4th 434, 450.) The due process right of effective counsel includes the right to services necessary in the preparation of a defense. (*Mason v. State of Arizona* (9th Cir. 1974) 504 F.2d 1345, 1351; *People v. Faxel* (1979) 91 Cal.App.3d 327, 330.)

The due process clause of the Fourteenth Amendment includes the right of an accused to have compulsory process for obtaining witnesses in his favor. (*Washington v. Texas* (1967) 388 U.S. 14, 17-18.) "[A] defendant's 'constitutional right to compulsory process is violated when the government interferes with the exercise of his right to present witnesses on his own behalf . . . .'" (*People v. Fuiava* (2012) 53 Cal.4th 622, 691.) "'"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" [Citation.]'" (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1258.)

"[A] prosecutor has no right to instruct witnesses not to talk with a defendant or defense counsel. [Citation.] A defendant, having the right to compulsory process for obtaining witnesses to testify in his behalf, also has the right either personally or by attorney, subject in certain instances to the proper exercise of judicial supervision, to ascertain what their testimony will be. [Citation.] This does not mean, of course, that a court has the authority to *compel* a witness to submit to an interview where the witness objects. [Citation.] It simply means a defendant is free to interview a witness where the witness is willing. [Citation.] Where the witness informs one party of his or her knowledge of a case and refuses to speak to the other party's representative, the remedy

16

is impeachment of the witness's testimony on the basis of bias. [Citation.]" (*People v. Pitts* (1990) 223 Cal.App.3d 606, 872-873, superseded on other grounds as stated in *People v. Levesque* (1995) 35 Cal.App.4th 530, 536-537.)

Defendant has failed to show that the prosecution, or any law enforcement officer, committed misconduct, and there was substantial evidence that they did not commit misconduct. Defendant contends that, "During trial, it was revealed that after the defense investigator tried to contact Patricia and Alejandro, Lucia . . . , the guardian for Patricia and Alejandro, called the police detective who told her it was not correct for them to speak to the defense investigator. As a result, she did not allow them to speak to the investigator." However, the record reflects that Lucia testified that her daughter, after speaking with Detective Carter, told her that Patricia and Alejandro "shouldn't talk to anyone." Because Lucia did not personally speak with Detective Carter, she does not know if those were his words. The prosecutor's opposition to defendant's motion for new trial states that Lucia's daughter told one of prosecution's investigators that Detective Carter told her that the children did not have to talk to the defense investigator if they did not want to and they were not obligated to speak with the investigator; Lucia's daughter apparently interpreted this response to mean that Lucia should not allow the children to be interviewed. In addition, Lucia testified that she asked Alejandro, who was an adult by this time, if he wanted to talk to the investigator, and he declined. Defendant's investigator also contacted Alejandro directly, and Alejandro declined to speak to the investigator.

In addition, defendant failed to explain how he was prejudiced by law enforcement officers who purportedly told Lucia that "it was not correct [for Patricia and Alejandro] to speak to the defense investigator." Plaintiff has not established that Patricia and Alejandro would have spoken to the defense investigator because they had a choice not to do so. In addition, assuming that they would have spoken with the defense investigator, defendant has failed to establish that the defense would have received any information it did not already know or that was in any way exculpatory or impeaching. Also, both Patricia and Alejandro testified at trial, and Patricia also testified at the preliminary

hearing. Defendant, therefore, had ample opportunity to question them about the events in this case. There was no prejudicial misconduct.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:



TURNER, P. J.



O'NEILL, J. *

---

\*     Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.